**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

DEC 18 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, | No. 19-55502 |
| Plaintiff-Appellant, | D.C. No. 2:18-cv-02893-SVW-GJS |
| v. | |
| CERTAIN UNDERWRITERS AT LLOYDS, LONDON, including Brit UW Limited for and on behalf of Lloyds Syndicate 2987, Beazley Furlonge Ltd. for and on behalf of Lloyds Syndicate 2623, Beazley Furlonge Ltd. for and on behalf of Lloyds Syndicate 0623, Faraday Capital Limited for and on behalf of Lloyds Syndicate 0435, Amlin Underwriting Limited for and on behalf of Lloyds Syndicate 2001, Renaissance Re Group for and on behalf of Lloyds Syndicate 1458; et al., | MEMORANDUM[*] |
| Defendants-Appellees. | |

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, | No. 19-56102 |
| Plaintiff-Appellee, | D.C. No. 2:18-cv-02893-SVW-GJS |
| v. | |
| DICKSTEIN SHAPIRO LLP, | |

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Defendant,

and

CERTAIN UNDERWRITERS AT LLOYDS, LONDON, including Brit UW Limited for and on behalf of Lloyds Syndicate 2987, Beazley Furlonge Ltd. for and on behalf of Lloyds Syndicate 2623, Beazley Furlonge Ltd. for and on behalf of Lloyds Syndicate 0623, Faraday Capital Limited for and on behalf of Lloyds Syndicate 0435, Amlin Underwriting Limited for and on behalf of Lloyds Syndicate 2001, Renaissance Re Group for and on behalf of Lloyds Syndicate 1458; et al.,

Defendants-Appellants.

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted December 7, 2020
Pasadena, California

Before: KELLY,** GOULD, and R. NELSON, Circuit Judges.

Scottsdale Insurance Company ("Scottsdale") filed an action for declaratory relief against Certain Underwriters at Lloyds, London ("Underwriters"), seeking a

---

** The Honorable Paul J. Kelly, Jr., United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

determination that, *inter alia*, a settlement entered into by Underwriters did not erode the limits on Dickstein Shapiro LLP's ("Dickstein")[1] professional liability policy. Underwriters counterclaimed seeking equitable contribution and for defense of a pending action against Dickstein. After cross motions for summary judgment, the district court concluded that (1) Scottsdale could not challenge Underwriters' settlement payment and the corresponding erosion of policy limits, and (2) Underwriters are not entitled to equitable contribution from Scottsdale. The district court also denied Scottsdale's motion to amend its complaint regarding a policy-period allegation. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, vacate in part, and remand.

## STANDARD OF REVIEW

We review the district court's ruling on summary judgment de novo. *Universal Cable Prods., LLC v. Atlantic Specialty Ins. Co.*, 929 F.3d 1143, 1151 (9th Cir. 2019). The denial of a motion to amend pleadings is reviewed for abuse of discretion. *Hall v. City of Los Angeles*, 697 F.3d 1059, 1072 (9th Cir. 2012).

## DISCUSSION[2]

**A. Scottsdale May Contest the Allocation of the SFA Settlement**

The first issue is whether Scottsdale may contest the allocation of the SFA

---

[1] Dickstein Shapiro LLP was dismissed from this appeal on February 20, 2020.
[2] Because the parties are familiar with the facts and procedural background, we need not restate them here.

settlement payment and the resulting erosion of the policy limits. The district court concluded that "Scottsdale has no independent right to veto a reasonable settlement decision made by the primary insurer." We disagree and hold that Scottsdale has the right to challenge the SFA settlement payment.

The SFA settlement addressed two types of claims: (1) claims against a former Dickstein partner for malpractice; and (2) claims against Underwriters for bad faith and failing to defend against the malpractice claim. Although the settlement did not allocate between the claims, the Underwriters did, agreeing that approximately $11.74 million would be paid out of the primary policy, $4.50 million would be paid out of the excess policy, and $1.26 million would be paid by the Underwriters as extra-contractual liability ("ECO").

After reviewing the record, we agree with the district court that this allocation appeared to be the product of collusion. This means that Underwriters may have eroded policy limits based on their payment to settle the bad faith and failure-to-defend claims. However, nothing in the insurance policy gives Underwriters the authority to do this. The policy provides that Underwriters

> pay on behalf of the Assured, Damages and Claims Expenses which the Assured shall become legally obligated to pay because of any Claim or Claims . . . arising out of any act, error or omission of the Assured, or of any person for whose acts, errors or omissions the Assured is legally responsible, in rendering or failing to render professional services . . . .

Clearly, Underwriters are not the "Assured," and the bad faith and failure-to-

defend claims in this case are not claims "arising out of any act, error or omission of the Assured[.]" Therefore, any payment to settle the bad faith or failure-to-defend claims should not have been paid out of the policy limits, but rather, as ECO. *See Bank of the W. v. Superior Ct.*, 833 P.2d 545, 552 (Cal. 1992) ("If contractual language is clear and explicit, it governs.").

This view is consistent with California insurance law. California courts have said that when an insurer breaches the duty to defend, it will be liable for damages that are the proximate cause of that breach. *Amato v. Mercury Cas. Co.*, 61 Cal. Rptr. 2d 909, 911 (Ct. App. 1997). This includes liability for a default judgment, *id.*, and includes damages, "whether within or above the policy limit." *State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co.*, 88 Cal. Rptr. 246, 259 (Ct. App. 1970). Those courts have reasoned that when an insurer denies coverage, it "does so at its *own* risk." *Id.* (emphasis added) (quoting *Comunale v. Traders & Gen. Ins. Co.*, 328 P.2d 198, 202 (Cal. 1958)). By denying coverage in the malpractice action, Underwriters took on that risk and should be liable for the consequences. Scottsdale was not involved in the denial of coverage and, importantly, was not even aware of the malpractice claim until after Underwriters denied coverage.

Although Underwriters defend their allocation as an accurate representation of the claims, they primarily contend that Scottsdale cannot challenge the payment at all. They rely on a number of cases for this general proposition, but one case —

*AXIS Reinsurance Co. v. Northrop Grumman Corp.*, 975 F.3d 840 (9th Cir. 2020)

— summarizes their view of the issue.  In *AXIS*, this court addressed an "issue of

first impression in our circuit" of "when, if ever, may an excess insurer challenge

an underlying insurer's payment decision as outside the scope of coverage?"  *Id.* at

842.  This court ultimately held "that an excess insurer may not challenge those

decisions in order to argue that the underlying liability limits were not (or should

not have been) exhausted absent a showing of fraud or bad faith, or the specific

reservation of such a right in its contract with the insured."  *Id.* at 847.

Although this language appears to support Underwriters' and the district

court's conclusion, context is key.  In that case, the excess insurer was arguing that

the claim against the *insured* was not a covered loss.[3]  *Id.* at 842.  Whereas here,

Scottsdale is arguing that a claim against the *insurer* is not a covered loss.  This

difference limits the *AXIS* court's primary justification for its rule — i.e.,

protecting the insured's objectively reasonable expectations.  *See id.* at 842, 846.

Allowing a limited challenge in these circumstances would not put coverage of the

---

[3] This is similar to the other cases the district court and Underwriters rely on.  *See, e.g.*, *Diamond Heights Homeowners Ass'n v. Nat'l Am. Ins. Co.*, 277 Cal. Rptr. 906, 909 (Ct. App. 1991) (excess insurers arguing that a settlement of the insured's claims fell under one of the policy's exclusionary provisions and it violated a consent requirement); *ARM Props. Mgmt. Grp. v. RSUI Indem. Co.*, No. A-07-CA-718-SS, 2008 WL 5973220, at *1 (W.D. Tex. Aug. 25, 2008) (excess insurer arguing that insured's claims were worth less and would not exhaust the prior levels' limits).

insured's claims at risk, and would not disturb its expectations. In fact, a time that the insured's expectations were particularly harmed seems to have been when Underwriters denied coverage in the malpractice claim.

Furthermore, to allow Scottsdale to challenge the allocation in this case would protect the insurers' reasonable expectations of the policy. *Cf. Bank of the W.*, 833 P.2d at 552 (noting that policies are interpreted "to give effect to the mutual intention of the parties"). Looking at the policy's text, it seems unlikely that Underwriters had any expectation that they could erode policy limits based on payments to settle alleged bad faith and failure-to-defend claims. On the other hand, Scottsdale likely had no expectation that, by insuring Dickstein, it was also taking on the liability arising from Underwriters' conduct. Indeed, the excess policy provides that the insurers will not pay until the primary insurers "have paid or have admitted liability or have been held liable to pay, the full amount of their indemnity inclusive of costs and expenses." There was no reason to think "indemnity" referred to claims brought against Underwriters.

Therefore, it is appropriate to allow Scottsdale to challenge the allocation of the SFA settlement in order to enforce the policy's language and protect the co-insurers' contractual expectations.[4] Because the district court did not determine the

---

[4] In doing so, we note that our decision will often be limited by the unique circumstances of this case. Indeed, in a majority of cases, we expect *AXIS* to

7

extent to which the SFA settlement erodes the policy limits, we remand the case so the district court can address this issue. *See In re Mortg. Store, Inc.*, 773 F.3d 990, 998 (9th Cir. 2014) ("In general, a federal appellate court does not consider an issue not passed upon below.") (quotation marks and citation omitted).

## B. Underwriters Are Not Entitled to Equitable Contribution

The next issue is whether Underwriters are entitled to equitable contribution from Scottsdale for any of the SFA settlement paid out of the excess policy. Equitable contribution is meant to "apportion a loss among several insurers" when each is "obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others." *Axis Surplus Ins. Co. v. Glencoe Ins. Ltd.*, 139 Cal. Rptr. 3d 578, 584 (Ct. App. 2012) (quotation marks and citation omitted). A district court will consider the relevant facts and policies when deciding "what is fair between the potential coinsurers." *Id.* at 590.

Although the amount at stake for this claim may change given our determination on the first issue, we conclude that the district court was correct to deny Underwriters equitable contribution from Scottsdale. Scottsdale was not provided notice of the original malpractice action until Underwriters denied

---

prevent excess insurers from "contesting payments made at prior levels of insurance." *AXIS*, 975 F.3d at 844.

8

coverage of the claim. As a result, Scottsdale was subjected to the financial burden of the claim, but it could not "enjoy any of the concomitant benefits," such as investigating the matter or participating in the defense. *Truck Ins. Exch. v. Unigard Ins. Co.*, 94 Cal. Rptr. 2d 516, 525 (Ct. App. 2000). Moreover, the collusive nature of the allocation would also support denying equitable contribution. *See Dillingham Constr., N.A., Inc. v. Nadel P'ship, Inc.*, 75 Cal. Rptr. 2d 207, 220 (Ct. App. 1998) ("An allocation that is collusive, and not the result of adverse negotiations between parties with competing interests, is suspect . . . ."). Therefore, the district court was correct that equity favors Scottsdale.

**C. The District Court Correctly Denied Scottsdale's Motion to Amend**

Finally, Scottsdale argues that the district court erred in denying the motion to amend its complaint to allege that the claim was allocated to the wrong policy period. As opposed to its other challenge, Scottsdale is trying to contest whether the malpractice action against Hettrick falls under the policy. This is exactly the type of claim precluded by *AXIS*. *See AXIS*, 975 F.3d at 847. The district court did not abuse its discretion in denying Scottsdale's motion to amend.

We AFFIRM the district court's judgment as to equitable contribution and the district court's denial of Scottsdale's motion to amend its complaint. We VACATE the district court's judgment regarding the issues of exhaustion and

9

erosion of the policy limits and the operative policy in the Muhs Action, and remand for further proceedings consistent with this memorandum.