[Nos. B229345, B231919. Second Dist., Div. Three. Oct. 25, 2012.]

ST. PAUL MERCURY INSURANCE COMPANY, Plaintiff and Respondent,
v.
MOUNTAIN WEST FARM BUREAU MUTUAL INSURANCE
COMPANY, Defendant and Appellant.

648

**COUNSEL**

Hall, Hieatt & Connely, Mark B. Connely and Stephanie A. Bowen for Defendant and Appellant.

Greenan, Peffer, Sallander & Lally, Robert L. Sallander, Jr., and Chip Cox for Plaintiff and Respondent.

**OPINION**

**ALDRICH, J.—**

## INTRODUCTION

St. Paul Mercury Insurance Company (St. Paul Mercury), the general liability insurer for the general contractor, sought equitable contribution from Mountain West Farm Bureau Mutual Insurance Company (Mountain West), the insurer for the framing subcontractor, based on an additional insured endorsement in Mountain West's policy naming the general contractor. The trial court ruled in favor of St. Paul Mercury and ordered Mountain West to contribute $2,087,171.50, plus interest in the amount of $372,731.73, to the

defense and settlement costs St. Paul Mercury incurred in the underlying construction defect litigation.

Mountain West's entire appeal is shaped by its view that it participated in the defense of its additional insured by paying into the settlement of the underlying construction defect action on behalf of its insured (the framing subcontractor). Yet, Mountain West admitted it owed a duty to defend its additional insured (the general contractor) but did not provide a defense. Consequently, the shifting burdens under *Safeco Ins. Co. of America v. Superior Court* (2006) 140 Cal.App.4th 874 [44 Cal.Rptr.3d 841] (*Safeco*) apply to this equitable contribution action. Thereunder, St. Paul Mercury had the burden to prove the potential for coverage under Mountain West's policies; Mountain West had the burden to prove the absence of actual coverage as an affirmative defense, and forfeited its right to challenge the reasonableness of the defense costs and the amounts paid in settlement. We hold the trial court's allocation of the burdens of proof under *Safeco* is supported by the evidence and its apportionment of costs was not an abuse of discretion. However, we also hold that the award of prejudgment interest was error. Accordingly, the judgment is affirmed in part and reversed in part.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The parties*

Four Seasons Jackson Hole (FSJH) commenced a project to build a Four Seasons resort hotel in Teton Village, near Jackson Hole, Wyoming, that included 17 high-end condominium units referred to as "Area 6." Jacobsen Construction Company, Inc. (Jacobsen), was the general contractor on the project. St. Paul Mercury insured Jacobsen in a series of a general liability policies through April 1, 2004.

Teton Builders, Inc. (Teton), the framing contractor, contracted to build all of the structural wood framing for the four-story Area 6 condominium units only. Teton did not work on the main hotel structure.

Mountain West insured Teton in two commercial general liability policies, one effective October 1, 2001, through October 1, 2002, and the other from October 2002 through October 1, 2003. Mountain West and Teton made Jacobsen an additional insured under Teton's policies on June 12, 2002, and removed Jacobsen from the policies on March 17, 2003.

Teton commenced framing on the Area 6 condominium units in July 2002. Teton built the skeleton of the building, i.e., the internal and external walls,

floors, roof, roof edges, crickets,[1] and the exterior balconies above the first floor. Teton stopped work in February 2003, after completing approximately 90 percent of the contract.

FSJH terminated Jacobsen from the project in February 2004.

### 2. The underlying construction defect action

Jacobsen sued FSJH alleging breach of contract and nonpayment. FSJH cross-complained against Jacobsen seeking damages for construction defects for, inter alia, "[i]nstallation of defective and non-conforming work," "defective and incomplete installation of exterior wood finishes," "out of plumb, out of square and/or out of level interior walls," and defective weatherproofing and roof edges. In its amended cross-complaint dated March 23, 2006, FSJH alleged "defective and deficient installation of framing, drywall, millwork, and paint at Area 6" among other problems (the underlying construction defect action).

To determine who should receive Jacobsen's tender of defense, Jacobsen's attorneys reviewed the list of defects alleged by FSJH to identify the potentially responsible trades. Jacobsen determined "early in the case" that it was allegedly liable for property damage purportedly arising from Teton's defective framing work. Jacobsen tendered its defense of the cross-complaint to every insurer that had issued a certificate of insurance or additional insured endorsement on every policy issued to a subcontractor whose work was allegedly defective. There were 14 such insurers, one of which was Mountain West. Jacobsen, through St. Paul Mercury, tendered the defense of FSJH's cross-complaint to Mountain West in late 2004.

Mountain West refused to accept St. Paul Mercury's tender and rejected numerous attempts by St. Paul Mercury's attorneys to share evidence showing the damage alleged by FSJH that arose out of Teton's framing work.

### 3. Settlement of the underlying construction defect action

The underlying construction defect action was resolved by a settlement in two phases. The first phase settled the siding and interior drywall issues and problems with wavy walls and improperly installed balconies in both the hotel and Area 6 condominiums, but excluded roofing and roof edge issues (the siding settlement). Thus, the siding settlement involved claims for property damage against Jacobsen that arose out of Teton's framing work. St. Paul Mercury contributed $1 million to that settlement on behalf of Jacobsen. Mountain West did not participate in the siding settlement or contribute any payments toward it.

---

[1] Roof crickets are the portion of the roof that connects to and drains into the downspout.

The second phase resolved all remaining claims, i.e., the roofing and roof edge issues (the roofing settlement). The total amount of the roofing settlement was $1.6 million. St. Paul Mercury contributed $1,265,000 to the roofing settlement. Mountain West paid $100,000 on behalf of Teton. The trial court found the entire settlement was made in good faith.

### 4. *The instant action for equitable contribution*

St. Paul Mercury brought the instant action for equitable contribution against four subcontractors and five insurers, including Teton and Mountain West. After various dispositive pretrial motions, of the five insurers St. Paul Mercury claimed owed a duty to defend Jacobsen, only Mountain West remained in the case. The threshold question of Mountain West's duty to defend Jacobsen in the underlying construction defect action was resolved by motion. Mountain West did not dispute it "never defended Jacobsen against FS Jackson Hole's cross-complaint." In granting summary adjudication, the trial court ruled Mountain West's duty to defend Jacobsen "was triggered by the allegations of framing deficiencies."

At trial, Jacobsen's forensic architectural expert and St. Paul Mercury's attorneys and adjuster described how the interior and exterior framing and roof damage alleged by FSJH were caused by Teton's defective framing work for which Jacobsen was allegedly liable. Teton's framing of the Area 6 ceilings and walls was improperly installed and warped, and out of plumb or plane, causing problems with the drywall, trim, door operations, the roof, and the casing, and allowed water to seep through windows and doors. Teton installed heavy timber railings and balusters, cracked beam ends and knee braces, and loose structural king posts that had cracks and gaps. On the exterior, the decks framed by Teton were higher than the interior floors allowing water to intrude into the condominium units and pond. Teton improperly installed the eaves and fascias on the buildings and so they and the roof leaked and caused water intrusion as well as gutter and downspout problems. Finally, Teton built all of the skeleton, putting up the walls, but failed to install the blocking and bracing on upper floors.

Jacobsen's project manager explained that construction was done in stages. Teton framed all four stories sequentially. As Teton finished framing the lower floors and began the next level, other trades followed with their work on the lower floors.

At the close of trial, the court issued a 12-page statement of decision in which it explained its finding that Mountain West improperly refused to participate in the defense of Jacobsen and did not prove the absence of actual coverage. Using a time-on-the-risk method of allocation, the court ordered

Mountain West to contribute $767,071.50 to the defense costs and $1,320,100 to the settlement. The amounts equate to 43 percent of each cost. The trial court also ordered Mountain West to pay prejudgment interest of $372,731.73, calculated at 10 percent as of November 5, 2008, the date Jacobsen paid its last legal bill.

Mountain West filed its timely appeals from the judgment and the later cost order. We consolidated the appeals.

## DISCUSSION

### I. *General principles of equitable contribution*

"Equitable contribution apportions costs among insurers sharing the same level of liability on the same risk as to the same insured, and is available when several insurers are ' "obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others." ' " (*Safeco, supra,* 140 Cal.App.4th at p. 879; see *Axis Surplus Ins. Co. v. Glencoe Ins. Ltd.* (2012) 204 Cal.App.4th 1214, 1221 [139 Cal.Rptr.3d 578] (*Axis Surplus*).)

" ' "The purpose of this rule of equity is to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others." ' " (*Safeco, supra,* 140 Cal.App.4th at p. 879.)

### II. *The burdens of proof*

#### a. *The law*

The parties disagree about who carried the burden of proof in this action. Mountain West argues that St. Paul Mercury failed to show that there was any potential insurance coverage under the Mountain West policies.[2] St. Paul Mercury counters that Mountain West had the burden to demonstrate the absence of coverage under its policies as an affirmative defense.

Normally, "[i]n an action by an insurer to obtain contribution from a coinsurer, the inquiry is whether the nonparticipating coinsurer 'had a *legal obligation* . . . to provide [a] defense [or] indemnity coverage for the . . .

---

[2] In this appeal, Mountain West did not directly challenge the trial court's findings that it failed to provide a defense to Jacobsen. Instead, by insisting that St. Paul Mercury has the burden to prove both that Teton was negligent and that Mountain West's policy covered FSJH's claim, and by arguing that *Safeco* does not apply here, Mountain West effectively presupposes it provided a defense.

claim or action prior to [the date of settlement],' and the burden is on the party claiming coverage [(St. Paul Mercury here)] to show that a coverage obligation arose or existed under the coinsurer's policy." (*Safeco, supra*, 140 Cal.App.4th at p. 879.)

However, the burdens and proof are altered somewhat when one insurer with a defense duty does not join in the defense of the underlying action. "In an action for equitable contribution by a settling insurer against a nonparticipating insurer, the settling insurer has met its burden of proof when it makes a prima facie showing of potential coverage under the nonparticipating insurer's policy. [Citation.] *The settling insurer does not have to prove actual coverage.* [Citation.] After the settling insurer has satisfied its burden of proof, the burden shifts to the nonparticipating insurer to prove an absence of actual coverage under its policy. [Citation.]" (*Axis Surplus, supra*, 204 Cal.App.4th at p. 1223, italics added, citing *Safeco, supra*, 140 Cal.App.4th at pp. 877 & 879.) In such a situation, the absence of actual coverage is an affirmative defense. (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2011) ¶ 8:72, p. 8-34.3 (rev. # 1, 2010) (Croskey); *Safeco, supra*, 140 Cal.App.4th at p. 881.)

> b. *The trial court properly found Mountain West was a nonparticipating coinsurer in the underlying construction defect action triggering the shifted burdens under* Safeco.

Insofar as we interpret Mountain West's or St. Paul Mercury's insurance policies or the settlement agreements without resort to extrinsic evidence, we apply a de novo standard of review. (*Axis Surplus, supra*, 204 Cal.App.4th at pp. 1221–1222.) However, insofar as the trial involved disputed facts, we review the trial court's express and implied findings for substantial evidence. (*Id.* at p. 1222.)

The trial court found that Jacobsen tendered the defense to Mountain West and that the insurer acknowledged Jacobsen was an additional insured under its policies covering Teton. The court also found that Mountain West acknowledged it had a duty to defend Jacobsen against FSJH's claims in the underlying construction defect action but did not assign defense counsel to defend Jacobsen or pay any costs incurred in the defense of Jacobsen in the underlying action.

Mountain West does not quarrel with the premise it owed a duty to defend. Rather, it disputes the trial court's conclusion it did not provide a defense in the underlying construction defect action. Mountain West argues, where it "defend[ed] Teton" and contributed to the roofing settlement "on behalf of Teton," that it participated in the defense. Mountain West argues the fact

it "did not accept St. Paul's tender and agree to defend *Jacobsen*" for Jacobsen's negligence "does not turn Mountain West into a nonparticipating insurer." (Italics added.) But, Mountain West *owed a duty to defend Jacobsen.* This duty is not eliminated by Mountain West's contribution to the settlement *on behalf of Teton.*

By virtue of its policies' additional insured endorsement naming Jacobsen, Mountain West had an obligation to provide a defense *to Jacobsen.* Mountain West's policies expressly included a duty to defend. The policy contained the standard defense provision that Mountain West will pay "those sums that the *insured* becomes legally obligated to pay as damages" and it had the "duty to defend the *insured* against any 'suit' seeking [those] damages." (Italics added.) The additional insured endorsement in the Mountain West policies made Jacobsen an "insured" and expressly imposed a duty to defend Jacobsen. (*Maryland Casualty Co. v. Nationwide Ins. Co.* (1998) 65 Cal.App.4th 21, 31 [76 Cal.Rptr.2d 113] (*Maryland Casualty Co.*); *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295 [24 Cal.Rptr.2d 467, 861 P.2d 1153] [" 'the existence of a duty to defend turns not upon the ultimate adjudication of coverage . . . but upon those facts known by the insurer at the inception of a third party lawsuit. [Citation.]' "].)

■ " 'It is settled that where an insurer has a duty to defend, the obligation generally applies to *the entire action, even though the suit involves both covered and uncovered claims, or a single claim only partially covered by the policy.* [Citations.]' [Citation.]" (*Transcontinental Ins. Co. v. Insurance Co. of the State of Pennsylvania* (2007) 148 Cal.App.4th 1296, 1303 [56 Cal.Rptr.3d 491], italics added; accord, Croskey, supra, ¶ 7:629, p. 7B-41 (rev. # 1, 2010).) This is so even where only a single claim is potentially covered by the policy, and where noncovered claims predominate. (Croskey, *supra*, ¶¶ 7:629 to 7:630.1, p. 7B-41 (rev. # 1, 2010).) Mountain West's obligation to provide a defense for its additional insured Jacobsen, applied to the entire action, regardless of how much of FSJH'S claims were covered by Mountain West's additional insured endorsement. (*Maryland Casualty Co., supra,* 65 Cal.App.4th at pp. 32–34 [additional insured endorsement in subcontractor's policy obligated insurer to defend additional insured general contractor for potentially covered claims].)

Recently, *Axis Surplus, supra,* 204 Cal.App.4th 1214 addressed a similar issue. The coinsurer, notified of the lawsuit, declined to participate in the defense but allowed its insured to contribute the self-insured retention to the settlement. *Axis Surplus* applied the shifted burdens of *Safeco* because, based on the timing of the payment of the self-insured retention, the coinsurer did not participate in the defense. (*Id.* at pp. 1219–1220, 1228–1229.) Likewise, here Mountain West cannot defeat equitable contribution merely because it

contributed a portion of the settlement on behalf of Teton when it failed to participate in or contribute to Jacobsen's defense.

The trial court properly concluded that Mountain West did not participate in the defense of Jacobsen, and on that basis applied the *Safeco* shifted burdens. (*Safeco, supra*, 140 Cal.App.4th at pp. 879–880.)

III. *Mountain West did not carry its burden under* Safeco.

Mountain West argues that *St. Paul Mercury failed to show* that there was "any potential insurance coverage under the Mountain West policy" for three reasons: (a) *there was no evidence* showing Teton was actually negligent; (b) *there was no evidence* showing what portion of the damages were caused by Teton's involvement in the project; and (c) there was no occurrence during the time the Mountain West policies were in effect.

Under the shifted burdens of *Safeco*, St. Paul Mercury did not have to prove actual coverage, only the potential for coverage. (*Axis Surplus, supra*, 204 Cal.App.4th at p. 1230, citing *Safeco, supra*, 140 Cal.App.4th at p. 879.) St. Paul Mercury "did not have to establish covered damages of any amount, but merely that the claims in the construction defect suit were potentially covered . . . ." (*Axis Surplus, supra*, at p. 1230.) St. Paul Mercury demonstrated that FSJH's claims concerning the roof, drywall, framing, siding, balconies, structural beams and posts, railings, balusters, and trim implicated Teton's framing work and hence showed the potential for coverage under Mountain West's additional insured endorsement. (*Montrose Chemical Corp. v. Superior Court, supra*, 6 Cal.4th at p. 295.) Accordingly, St. Paul Mercury carried its burden.

Mountain West had the burden, according to *Safeco*, to prove *the absence of actual coverage* as an affirmative defense. (*Safeco, supra*, 140 Cal.App.4th at p. 881.) The trial court found in its statement of decision that Mountain West did not establish any limitation or reduction on its obligation to provide coverage to Jacobsen in the underlying construction defect action and did not present evidence that any of Jacobsen's defense costs paid by St. Paul Mercury could be allocated solely to claims for which there was no coverage under the Mountain West policies. We treat Mountain West's arguments (a) through (c) above as challenges to the court's findings and reject the contentions.

a. *The settlement agreements did not release Mountain West and so it remained liable for its coverage promise.*

Mountain West first contends that its contribution obligation was eliminated by the roofing settlement between FSJH, Jacobsen, Teton, and three

other subcontractors. It reasons, even were Teton negligent, where the roofing settlement released all claims " 'by and among [Jacobsen's subcontractors who participated in the settlement] that arise out of or are in any way related to the Project,' " that Jacobsen had no claim for indemnity against Teton. Recognizing neither it nor St. Paul Mercury was a party to the roofing settlement agreement,[3] Mountain West cites *Performance Plastering v. Richmond American Homes of California, Inc.* (2007) 153 Cal.App.4th 659 [63 Cal.Rptr.3d 537] (*Performance Plastering*) to argue, as Teton's insurer, it is a third party beneficiary of the roofing settlement agreement, which bars St. Paul Mercury's claim for equitable contribution against Mountain West. We disagree.

■ Nothing in *Performance Plastering* persuades us that Mountain West is a third party beneficiary to the roofing settlement. A third party to a contract need not be named as long as it can show it is one of a class for whose benefit the contract was made. (*Performance Plastering, supra*, 153 Cal.App.4th at p. 667.) In *Performance Plastering*, the settlement agreements " 'release[d] and forever discharge[d] Subcontractor *and its insurers . . . .*' " (*Ibid.*) Based on this language, the court held there was a possibility the subcontractor's insurer was a third party beneficiary of the settlement between the builder and the subcontractor as one of the class for whose benefit the settlement was made. (*Ibid.*) Here by contrast, the roofing settlement does not release Mountain West or refer to insurers as a class. It states, "*the Parties* hereby forever *release* and discharge *each other* from any and all liability. . . . Moreover, . . . [Jacobsen] and Teton release each other from any and all liability . . . ." (Italics added.) Mountain West is clearly not one of the class for whose benefit the release was made.

Mountain West also overlooks two other provisions of the roofing settlement that patently demonstrate Mountain West was not released from its contribution obligation. Paragraph 2 entitled "*Conditions to Dismissal of the Litigation . . .*" reads: "The Parties shall file dismissals with prejudice of all complaints or cross-complaints on file by or against each other . . . upon all of the following having occurred: [¶] . . . [¶] Coverage Action Dismissal. [St. Paul Mercury] an insurer for [Jacobsen], shall have filed a dismissal with prejudice of its complaint against the settling Parties, *but not their insurers*, . . . in [the instant action.]" (Italics added.) Paragraph 8(p) reads, "This Agreement shall be binding upon and inure to the benefit of not only the Parties but also their respective agents . . . and insurers (*excepting those rights which any named insured or additional insured or their other insurers*

---

[3] St. Paul Mercury explained that St. Paul Fire and Marine Insurance Company (SPFM) was a party to the settlement. However, SPFM, who issued a performance bond to Jacobsen, is a different corporate entity from St. Paul Mercury, was not Jacobsen's general liability insurer, and is not a party to this equitable indemnity action.

*in equitable contribution or subrogation may have against any insurer otherwise to be released by inclusion herein)* . . . ." (Italics added.) As paragraphs 2 and 8(p) demonstrate, nothing in the roofing settlement released claims for equitable contribution by St. Paul Mercury, a nonparty to that settlement, against Mountain West, another nonparty. Rather, the roofing settlement expressly reserved claims for equitable contribution between St. Paul Mercury and other insurers.[4] The roofing settlement did not affect Mountain West's indemnity obligation, and thus is not a basis for reducing or curtailing Mountain West's obligation to provide coverage.

 b. *Mountain West did not demonstrate a limit on actual coverage based on the additional insured endorsement.*

Mountain West next relies on the language of the additional insured endorsement to argue that it indemnified Jacobsen only to the extent Jacobsen would be held vicariously liable for Teton's negligent work. The endorsement named Jacobsen as an additional insured "but only with respect to liability *arising out of 'your [Teton's] work'* for [St. Paul Mercury]˙ by or for you." (Italics added.) Mountain West argues that this language did not insure Jacobsen for liability unrelated to Teton's work and so before Mountain West's duty to indemnify arose, St. Paul Mercury was required to demonstrate that portion of FSJH's claims involved Teton's work for which Teton was actually negligent.

Mountain West has confused the burdens of proof. Given the shifted burden under *Safeco* here, St. Paul Mercury was only required to demonstrate *a potential* for coverage. (*Safeco, supra,* 140 Cal.App.4th at p. 877.) We therefore understand Mountain West's contention to be its affirmative defense that its additional insured endorsement limited actual coverage to that portion of Jacobsen's liability that *arose out of* Teton's negligent work for Jacobsen.

█ ". . . California courts have consistently given a broad interpretation to the terms 'arising out of' or 'arising from' in various kinds of insurance provisions. It is settled that this language does not import any particular standard of causation or theory of liability into an insurance policy. Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship. [Citations.]" (*Acceptance Ins. Co. v. Syufy Enterprises* (1999) 69 Cal.App.4th 321, 328 [81

---

[4] As Mountain West acknowledges, the roofing settlement agreement is unambiguous. Therefore, we need not consider the parol evidence cited by both parties in their briefs on appeal. Under the parol evidence rule "[e]xtrinsic evidence cannot be admitted to prove what the agreement was, not for any of the usual reasons for exclusion of evidence, but because as a matter of law the agreement is the writing itself. [Citation.]" (*BMW of North America, Inc. v. New Motor Vehicle Bd.* (1984) 162 Cal.App.3d 980, 990 [209 Cal.Rptr. 50].)

Cal.Rptr.2d 557] (*Syufy*).) The additional insured endorsement in *Syufy* was identical to the one in Mountain West's policy.[5] In *Syufy*, the contractor's employee lost a finger because of a defective hatch on Syufy's roof where the employee was working. The *Syufy* court held that the contractor's employee's injury "arose out of" the work he was performing, even though the defect was attributable to Syufy only, because the relationship between Syufy's defective hatch and the contractor's job was more than incidental. The employee could not have done the job without passing through the hatch. (69 Cal.App.4th at p. 328.) Thus, a minimal causal connection is required. "Something *less than* proximate cause . . . . Mere 'but for' causation may suffice." (Croskey, *supra*, ¶ 7:1409.3, p. 7E-8 (rev. # 1, 2011) some italics omitted.)[6]

Here, the record supports the trial court's finding concerning the damage "arising out of" Teton's work. The evidence shows that Teton commenced construction in July 2002. As Teton finished the framing, other trades followed with their work. Thus, defects in the roof, flashing, gutters, crickets, balconies, siding, drywall, casework, doors, windows, posts and beams were all either Teton's deficient work itself or caused by Teton's work. Mountain West cites evidence to the contrary. Yet, that there is evidence contradicting some of the evidence of coverage does not *negate* the trial court's finding concerning Teton's negligence and causation. (*Beckman Instruments, Inc. v. County of Orange* (1975) 53 Cal.App.3d 767, 775–776 [125 Cal.Rptr. 844] ["it is not the function of a reviewing court to reweigh the evidence, judge credibility of witnesses, or to determine the weight to be given expert testimony."].) Mountain West did not carry its burden to show a limitation on actual coverage based on the wording of the additional insured endorsement. (*Safeco, supra*, 140 Cal.App.4th at p. 881; *Axis Surplus, supra*, 204 Cal.App.4th at pp. 1230–1231.)

 c. *The occurrence date for property damage fell within the Mountain West policy period and so actual coverage was not limited on that basis.*

The Mountain West policies provided, "This insurance applies to 'bodily injury' and 'property damage' only if: [¶] (1) The 'bodily injury' or 'property

---

[5] Just as here, the insurance clause provided that Syufy, the property owner, was an additional insured under the contractor's policy, " 'but only with respect to liability arising out of "your work" for that insured by or for you.' " (*Syufy, supra*, 69 Cal.App.4th at p. 324.)

[6] Mountain West's reliance on *Maryland Casualty Co., supra*, 65 Cal.App.4th 21 to argue the defects alleged were not covered by its policy is misplaced. *Maryland Casualty Co.* analyzed the scope of the duty to defend under the additional insured endorsement there, and did not interpret the extent of the indemnification agreement. The case does not stand for propositions it did not decide. (See *Powers v. City of Richmond* (1995) 10 Cal.4th 85, 147 [40 Cal.Rptr.2d 839, 893 P.2d 1160] ["Judicial decisions are of course authority for what they actually decide; we do not readjust their holdings to incorporate claims not asserted or considered therein."].)

damage' is caused by an occurrence' that . . . [¶] . . . *occurs during the policy period.*" (Italics added.) "Occurrence" is defined in the policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Mountain West's policies and the additional insured endorsement were occurrence-based, which means that the policies covered property damage that occurred during the policy period. (*Montrose Chemical Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645, 668 [42 Cal.Rptr.2d 324, 913 P.2d 878] (*Montrose*).) Under Mountain West's policies, at least some of the damage must have *happened during the term of the policy.* (Croskey, *supra,* ¶ 7:74, p. 7A-28 (rev. # 1, 2011).)

 "A key inquiry under an occurrence-based policy is what fact or event triggers an insurer's duty to defend and/or indemnify its insured. [Citation.] . . . [Trigger] describes what must happen during the policy period to activate the insurer's duties . . . . [Citation.] The trigger of coverage usually determines which insurance policy or policies may provide coverage. [Citation.]" (*Stonelight Tile, Inc. v. California Ins. Guarantee Assn.* (2007) 150 Cal.App.4th 19, 35 [58 Cal.Rptr.3d 74] (*Stonelight Tile*).) For occurrence-based policies in construction defect cases, "[t]he trigger of coverage depends on determining the cause of the injury." (Croskey, *supra,* ¶ 7:1433.5, p. 7E-29 (rev. # 1, 2011).)

Here, the trial court found that the property damage arising out of Teton's work "began occurring promptly as other trades followed [Teton's] framing work" "before March 17, 2003," the date Jacobsen was removed from Mountain West's policies, and was "of a continuous, progressive nature." The trigger the trial court identified was " 'a continuing event (referred to in [comprehensive general liability (CGL)] policies as "continuous or repeated exposure to conditions") resulting in single or multiple injuries . . . .' [Citation.]" (*Stonelight Tile, supra,* 150 Cal.App.4th at pp. 35–36.) Employing this continuous injury trigger, the trial court found the damage occurred during the term of Mountain West's policies. (Croskey, *supra,* at ¶¶ 7:74 to 7:75.5, p. 7A-28 (rev. # 1, 2011); *Montrose, supra,* 10 Cal.4th at pp. 672–673, 689.) The record supports the trial court's application of the continuous injury trigger under the Mountain West policies. The testimony showed that the framer was the source of the siding and roofing defects. As Teton improperly and defectively constructed the skeleton, other trades followed with their work, which amplified the flaws in Teton's framing.

Mountain West argues the event giving rise to the property damage in this case did not occur until April 2003, a month after Jacobsen was removed from Mountain West's policies. For this proposition, Mountain West cites testimony that the only one of the *St. Paul Mercury* policies that applied to the loss here was the policy in effect from April 1, 2003, to April 1, 2004.

Mountain West argues this testimony "necessarily means that the first manifested property damage here was during that time frame."

■ However, the cited testimony concerned the endorsement in *St. Paul Mercury's policies* that limited coverage for progressive property damage to the one policy period in which the damage *first manifested*. The endorsement states: "We'll consider all physical damage to tangible property of others to happen at the time that it is *first manifested*. [¶] *First manifested* . . . means first known, or first in a condition where it reasonably should have been known, by you." (First italics added.) This endorsement made *manifestation of damage* the trigger under the St. Paul Mercury policies. (*Pepperell v. Scottsdale Ins. Co.* (1998) 62 Cal.App.4th 1045, 1052 [73 Cal.Rptr.2d 164] (*Pepperell*).) Under the manifestation trigger, "the insurer on the risk 'at the time appreciable property damage first becomes manifest [is] solely responsible for indemnification to the insured.' " (*Ibid.*)

■ Mountain West's policy did not contain an endorsement limiting coverage to the *first manifested damage*. As explained, the trigger in Mountain West's policy was continuous injury. Under that trigger, " '*the date of discovery of the damage or injury* [*is not*] *controlling* . . . . It is only the *effect*—the occurrence of bodily injury or property damage during the policy period, resulting from a sudden accidental event or the "continuous or repeated exposure to conditions"—that triggers potential liability coverage.' [Citation.]" (*Pepperell, supra,* 62 Cal.App.4th at p. 1052, first italics added, quoting from *Montrose, supra,* 10 Cal.4th at p. 675.) Occurrence-based policies will "cover injuries that 'occur' during the policy period *even if not discovered or manifested until after expiration of the policy period.*" (Croskey, *supra,* ¶ 7:75.5, p. 7A-28, italics added, citing *Montrose, supra,* at p. 689.) Therefore, Mountain West did not demonstrate an absence of coverage based on the wording of the endorsement in St. Paul Mercury's policies limiting coverage to the first manifested property damage. (*Safeco, supra,* 140 Cal.App.4th at p. 881.)

IV. *Substantial evidence supports the contribution allocation.*

■ Having determined that Mountain West had a duty to defend Jacobsen and that Mountain West actually covered the risk and failed to demonstrate a limitation or reduction of that coverage, we turn to the trial court's ruling allocating the contribution obligation. "Equitable contribution is usually allowed for the amount paid in settlement of the third party claim . . . plus defense costs incurred by the insurer who defended the action. [Citation.]" (Croskey, *supra,* ¶ 8:67.20, pp. 8-33 to 8-34 (rev. # 1, 2010)), and interest under Civil Code section 3287, subdivision (a) (Croskey, *supra,* ¶ 8:67.23, p. 8-34 (rev. # 1, 2010)).

All that St. Paul Mercury as insurer seeking equitable contribution was required to show was that Mountain West was another insurer covering the same risk and failed to pay its fair share of the loss. (*Maryland Casualty Co., supra*, 65 Cal.App.4th at p. 27.) Absent a showing it paid more than its fair share of defense or indemnity costs, St. Paul Mercury would not be able to recover against even an insurance company who contributed nothing. (*Scottsdale Ins. Co. v. Century Surety Co.* (2010) 182 Cal.App.4th 1023, 1035–1036 [105 Cal.Rptr.3d 896] (*Scottsdale*); accord, Croskey, *supra*, ¶ 8:67.19, p. 8-33 (rev. # 1, 2010).) Also, as the party seeking contribution, St. Paul Mercury bore "the burden of producing the evidence necessary to calculate such 'fair share.' " (*Scottsdale, supra*, at p. 1028.)

As a coinsurer who declined to provide a defense, Mountain West was precluded from challenging the reasonableness of the defense costs or the amount in settlement. (*Safeco, supra*, 140 Cal.App.4th at p. 880.) Thus, the parties stipulated that St. Paul Mercury paid $1,783,887.20 to defend Jacobsen and that a total of $3.07 million was paid to settle the case.

▪ "In determining whether one insurer is entitled to contribution from another, ' "[c]ourts should consider the nature of the claim, the relation of the insured to the insurers, the particulars of each policy and any other equitable considerations." ' [Citations.]" (*Truck Ins. Exchange v. Unigard Ins. Co.* (2000) 79 Cal.App.4th 966, 974 [94 Cal.Rptr.2d 516]; see *Axis Surplus, supra*, 204 Cal.App.4th at p. 1231.) "The proper allocation of costs is within a trial court's broad discretion. [Citations.]" (*Maryland Casualty Co. v. Nationwide Mutual Ins. Co.* (2000) 81 Cal.App.4th 1082, 1094 [97 Cal.Rptr.2d 374].) "We review the trial court's ultimate equitable determination in allocating liability among the responsible insurers for abuse of discretion. [Citations.] An abuse of discretion occurs when, in light of applicable law and considering all relevant circumstances, the court's ruling exceeds the bounds of reason. [Citations.]" (*Axis Surplus, supra*, at p. 1231.)

 a. *The trial court did not abuse its discretion in allocating defense costs.*

▪ St. Paul Mercury proved first that it and Mountain West were the only insurers who had a duty to defend Jacobsen in the underlying construction defect action after the other insurers it sued were dismissed from the action for various reasons. St. Paul Mercury also demonstrated it paid more than its fair share of the defense costs; it paid all of those costs and Mountain West paid none. Necessarily, St. Paul Mercury paid more than its fair share of the defense costs. (*Scottsdale, supra*, 182 Cal.App.4th at pp. 1035–1036.) The trial court ordered Mountain West to pay 43 percent of the defense costs. This ruling was not error.

The trial court ruled that Mountain West's duty to defend arose "upon the tender of [FSJH's] cross-complaint to Mountain West," i.e., late 2004. "[A]n insurer's obligation of equitable contribution for defense costs arises where, after notice of litigation, a diligent inquiry by the insurer would reveal the potential exposure to a claim for equitable contribution, thus providing the insurer the opportunity for investigation and participation in the defense in the underlying litigation." (*OneBeacon America Ins. Co. v. Fireman's Fund Ins. Co.* (2009) 175 Cal.App.4th 183, 207 [95 Cal.Rptr.3d 808].) After that date, Mountain West's duty to defend applied to the entire action (*Transcontinental Ins. Co. v. Insurance Co. of the State of Pennsylvania, supra,* 148 Cal.App.4th at p. 1303; Croskey, *supra,* ¶ 7:629, p. 7B-41), and Mountain West was the only insurer from which St. Paul Mercury could seek equitable contribution (*Scottsdale, supra,* 182 Cal.App.4th at p. 1035).

Mountain West cites the summary adjudication order to argue that its duty to defend was not *triggered* until the framing deficiencies were alleged in FSJH's *first amended cross-complaint on March 23, 2006,* with the result it was only obligated to pay those defense costs incurred after that date. The summary adjudication order upon which Mountain West relies does not aid Mountain West because it did not specify on which version of the FSJH cross-complaint it relied; it simply stated that "there is no material issue that the duty to defend Jacobsen was triggered by the allegations of framing deficiencies." FSJH's original complaint alleged defective installation of exterior and interior walls and roof edges, which allegations upon tender would trigger an inquiry by Mountain West. The trial court properly ruled that Mountain West's duty to defend arose upon tender, i.e., late 2004.

Next, Mountain West argues that St. Paul Mercury failed to demonstrate how much of the total defense costs were incurred to defend claims arising from Teton's work. Not so.

The alleged damages to the exterior siding and roofs were weighed more heavily by the parties than other claimed property damage. Teton played a part in all of the skeletal and roof problems in Area 6, while Jacobsen was only 10 percent negligent. St. Paul Mercury demonstrated Teton's negligent work was at the root of extensive damage both inside and outside of the condominiums, including the walls, windows, doors, siding, roofs, and balconies. The evidence supports the implied conclusion that a vast majority of the defense costs were incurred to defend claims arising from Teton's work. The itemized list of St. Paul Mercury's payments for defense costs admitted as exhibit No. 19 shows that all but $6,033.92 was paid after the tender.

We reject Mountain West's further contention that the judgment requiring it to pay 43 percent of the total defense costs is inequitable because there is no

evidence suggesting that the potential claims arising out of Teton's work was close to that amount. Mountain West argues that where there were 18 subcontractors on the entire project and allegations of defects unrelated to Teton's work, it should not be required to pay 43 percent of the defense costs. But, only St. Paul Mercury and Mountain West had a duty to defend Jacobsen and, as noted, St. Paul Mercury demonstrated what portion of the claims against Jacobsen arose out of Teton's work. The trial court's allocation of defense costs did not exceed the bounds of reason.

> b. *The trial court did not abuse its discretion in allocating the amounts paid in settlement.*

St. Paul Mercury also demonstrated it paid more than its fair share of the settlement where the entire settlement was for $3.07 million and Mountain West paid $100,000 into the roofing settlement and did not contribute to the siding settlement.

The trial court here chose the time-on-the-risk method to apportion responsibility, which "[a]pportionment [is] based upon the relative duration of each primary policy as compared with the overall period during which the 'occurrences' 'occurred . . . .' " (*Stonewall Ins. Co. v. City of Palos Verdes Estates* (1996) 46 Cal.App.4th 1810, 1861 [54 Cal.Rptr.2d 176].) In so ruling, the court noted that this approach was the most equitable and the most favored method of apportionment. The court reasoned that both insurers' policies afforded coverage for property damage during their policy periods and that there was continuing and progressive property damage claimed against Jacobsen by FSJH that arose out of Teton's work and that occurred during Mountain West's policy period.

The trial court did not abuse its discretion. Mountain West's policies were in effect during the period of Teton's work, or about nine months, whereas St. Paul Mercury's policy was in effect for 12 months. The court heard St. Paul Mercury's description of each theory of allocation and the calculations under each theory based on the evidence adduced at trial. Under most of the usual methods, Mountain West's pro rata share was two-thirds to St. Paul Mercury's one-third. Under the premiums paid theory, Mountain West's share would be 1.1 percent. Therefore, the time-on-the-risk allocation, under which Mountain West's share worked out to 43 percent of the total, was the most equitable. As there were only two insurers with a duty to defend Jacobsen and which provided coverage for property damage during their policy periods, it would have been unfair to saddle Mountain West with a 60 percent or a 1 percent share. Mountain West does not challenge the court's allocation under this method. The trial court did not abuse its discretion.

### c. *The trial court erred in awarding prejudgment interest.*

Mountain West contends that the trial court committed reversible error in awarding St. Paul Mercury prejudgment interest at 10 percent from November 5, 2008, the date of St. Paul Mercury's last defense payment, pursuant to Civil Code section 3287.[7] It correctly argues that St. Paul Mercury's damages were not "certain, or capable of being made certain by calculation" as contemplated by that statute.

■■■ " 'Damages are deemed certain or capable of being made certain within the provisions of subdivision (a) of section 3287 where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage.' [Citations.] The statute does not authorize prejudgment interest where the amount of damage, as opposed to the determination of liability, 'depends upon a judicial determination based upon conflicting evidence and is not ascertainable from truthful data supplied by the claimant to his debtor.' [Citations.]" (*Fireman's Fund Ins. Co. v. Allstate Ins. Co.* (1991) 234 Cal.App.3d 1154, 1173 [286 Cal.Rptr. 146].)

■■■ " ' " '[T]he certainty requirement of [Civil Code] section 3287, subdivision (a) has been reduced to two tests: (1) whether the debtor knows the amount owed or (2) whether the debtor would be able to compute the damages.' [Citation.]" ' [Citation.]" (*Fireman's Fund Ins. Co. v. Allstate Ins. Co., supra,* 234 Cal.App.3d at p. 1173.) Generally, nonparticipating coinsurers can be "liable for interest on their prorated share of the loss, computed from the date of settlement" because that is the date that the loss is certain or capable of being made certain by calculation. (Croskey, *supra,* ¶ 8:67.23, p. 8-34.)

■■■ Here, no dispute existed about the amounts paid in settlement; the parties stipulated to the sum. Indeed, under *Safeco,* "[t]he settlement and the amount of the settlement are . . . presumptive evidence of the insurer's liability and the amount of liability. [Citation.]" (*Axis Surplus, supra,* 204 Cal.App.4th at p. 1224, citing *Safeco, supra,* 140 Cal.App.4th at p. 880.) However, the issues at trial included not only legal questions about whether Mountain West was responsible for contribution, but also the allocation of responsibility and hence the amount of that contribution. The trial court was asked to choose the method of allocation, i.e., the basis for computation, and

---

[7] Subdivision (a) of section 3287 of the Civil Code reads in relevant part, "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt."

to calculate the exact portion of the stipulated defense and settlement costs Mountain West would have to contribute. Thus, Mountain West was not able to compute the damages (*Fireman's Fund Ins. Co. v. Allstate Ins. Co., supra,* 234 Cal.App.3d at p. 1173) and its share of the loss was not " 'certain, or capable of being made certain by calculation' " (Civ. Code, § 3287, subd. (a); Croskey, *supra,* ¶ 8:67.23, p. 8-34) until the trial court determined what method of allocation was most equitable. Consequently, the trial court erred in awarding prejudgment interest.

## DISPOSITION

The judgment is affirmed in part and reversed in part. Each party to bear its own costs on appeal.

Croskey, Acting P. J., and Kitching, J., concurred.