Filed 9/8/22  Western World Ins. v. Federal Ins. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| WESTERN WORLD INSURANCE COMPANY,<br><br>    Plaintiff, Cross-defendant, and Respondent,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY,<br><br>    Defendant, Cross-complainant, and Appellant. | 2d Civ. No. B311994<br>(Super. Ct. No. 17CV01727)<br>(Santa Barbara County) |

This is a dispute between two insurers over the priority of coverage arising from a single incident.  We conclude the trial court properly determined the priority of the coverage.  We affirm.

# FACTS

## *Underlying Action*

In May 2014, Elliot Roger murdered his two roommates and their friend at the Capri Apartments (Capri) in Isla Vista, California. The victims' heirs brought an action for wrongful death (*Chen v. Hi-Desert Mobile Home Park* (Super. Ct. Santa Barbara County, 2015, No. 15CV04163) (*Chen* action) against the owner of the apartments, Hi-Desert Mobile Home Park, LP (Hi-Desert) and the manager, Asset Campus Housing, Inc. (ACH). The action alleged that ACH and Hi-Desert had notice of Roger's violent propensities, but assigned him to be the victims' roommate.

## *Insurance Coverage*

Associated Industries Insurance Company (AIIC) provided general liability coverage for both Hi-Desert and ACH. Federal Insurance Company (Federal) provided coverage in excess of AIIC's coverage for both Hi-Desert and ACH. Western World Insurance Company (Western) provided excess general liability coverage for ACH, but not Hi-Desert.

The insurers did the right thing by their insureds. They each contributed funds for a settlement of the underlying action, leaving the question of priority of coverage to separate litigation among the insurers.

## *Instant Action*

Western filed a complaint against AIIC and Federal seeking a declaration that Western's coverage was in excess of both AIIC and Federal's coverages. Western's first amended complaint added causes of action for equitable subrogation and equitable indemnity against Federal. Western sought the return

of all of its contributed funds on the ground that the settlement of the underlying action was not in excess of Federal's coverage.

AIIC filed a cross-complaint seeking a declaration that Western's coverage was co-primary for ACH. Federal cross-complained against Western seeking a declaration that Federal's coverage for ACH is in excess of Western's coverage and granted Western's motion for summary judgment.

Western and Federal also made cross-motions for summary adjudication and summary judgment. The trial court granted Western's motion for summary adjudication and denied Federal's motion for summary judgment.

The trial court found that Western's coverage of ACH is in excess of both AIIC's and Federal's coverage. The court's grant of summary adjudication in favor of Western resolved all claims against Federal. Federal appeals.

DISCUSSION

I.

*Standard of Review*

Because Western's motion for summary adjudication resolved all claims against Federal, it is equivalent to a motion for summary judgment.

Summary judgment is properly granted only if all papers submitted show there is no triable issue as to any material fact and the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)[1] The court must draw all reasonable inferences from the evidence set forth in the papers except where such references are contradicted by other inferences or evidence which raise a triable issue of fact. (*Ibid*.) In

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

3

examining the supporting and opposing papers, the moving party's affidavits or declarations are strictly construed and those of his opponent liberally construed and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. (*Szadolci v. Hollywood Park Operating Co.* (1993) 14 Cal.App.4th 16, 19.)

The moving party has the initial burden of showing that one or more elements of a cause of action cannot be established. (*Saelzer v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.) Where the moving party has carried that burden, the burden shifts to the opposing party to show a triable issue of material fact. (*Ibid.*) Our review of the trial court's grant of the motion is de novo. (*Id.* at p. 767.)

## II.

### *Western's Coverage Is Not Primary*

Federal contends the trial court erred in determining Western's coverage was not primary.

Western's policy provides two kinds of general liability coverage. One is for 54 locations specifically designated by their names and addresses. It is undisputed that this is primary liability coverage. But Capri is not one of those properties.

Western's other coverage is by an endorsement to the policy under the heading "Real Estate Property Managed-Contingent." It provides coverage for property managed but not owned by ACH. The contingency is that the property owner must maintain personal injury insurance with limits equal to or greater than $1 million. The endorsement provides:

4

"4. **Other Insurance**

" . . .

"b) *Excess Insurance*

"With respect to your liability arising out of 'real estate property managed – contingent' for which you are acting as real estate manager, this insurance is excess over any valid and collectible insurance available to you, whether such insurance is primary or excess."

The endorsement provides that Western's coverage is excess to any other insurance ACH has whether primary or excess. The language in Western's endorsement could not be more clear. Western's coverage of ACH is not primary.

Federal argues Western cannot rely on its other insurance clause because "[a]n 'other insurance' dispute can only arise between carriers on the same level, it cannot arise between excess and primary insurers." (Quoting *North River Ins. Co. v. American Home Assurance Co.* (1989) 210 Cal.App.3d 108, 114.) But Federal takes the quote out of context. All the court is saying is that an insurer whose policy is *ab initio* primary cannot use an "other insurance" clause to transform its policy into an excess policy against another insurer whose policy is *ab initio* excess. (*Id.* at p. 113.)

Here Western is not using its other insurance clause to transform its policy from primary to excess. Instead, it is using the clause to show that its policy is *ab initio* excess over all other insurance. That is the bargain Western made with its insured. The trial court properly relied on the clause to determine the priority of coverage.

Federal cites a number of cases for the proposition that its excess coverage will attach only after all primary coverage is

5

exhausted.  (Citing, e.g., *Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.* (1981) 126 Cal.App.3d 593, 600.)  Federal argues Western cannot shift its primary coverage liability onto Federal.  But Western has no primary coverage liability.

Federal argues that its policy is excess level insurance.  No one disputes that.  But only AIIC is listed in Federal's policy under "Schedule Of Underlying Insurance."  Western is not mentioned anywhere in Federal's policy.

Federal agreed to pay on behalf of ACH "that part of loss to which this coverage applies, which exceeds the applicable underlying limits."  The policy defines "underlying limits" as relevant here, as follows:

"**Underlying Limits** means the sum of amounts:

"A. shown for hazards described in the Schedule Of Underlying Insurance, consisting of amounts:

"1. available under applicable **underlying insurance**; and

". . .

"B. available under any applicable antecedent, renewal or replacement of **underlying insurance**."

Federal's policy defines *underlying insurance* as: "*Underlying insurance* means the coverages for hazards described in the Schedule Of Underlying Insurance and the next renewal or replacement thereof."

The only insurer named in the Schedule of Underlying Insurance is AIIC with underlying limits of $1 million.

Thus, as relevant here, the only contingency for Federal's liability under its policy is the exhaustion of AIIC's primary $1 million policy limits.  Federal's liability was not contingent on the exhaustion of limits under Western's policy.  Instead, Federal undertook to provide coverage immediately upon exhaustion of

6

AIIC's policy limits, whereas Western obligated itself to provide coverage only when the limits of all other available coverage, both primary and excess, were exceeded. Western's coverage is in excess of Federal's coverage. (See *Carmel Development Co. v. RLI Ins. Co.* (2005) 126 Cal.App.4th 502, 510-511 [insurers not on same level where one insurer undertook to provide coverage immediately upon exhaustion of named primary insurer's policy limits and other insurer obligated itself to provide coverage only when limits of all other insurance, primary and excess, were exceeded].)

Federal relies on the definition of "underlying limits" in its policy as "the sum of amounts . . . shown for the hazards described in the Schedule Of Underlying Insurance." Federal argues that the "hazards described" include general liability, a hazard also insured by Western. Federal concludes its insurance is excess to both AIIC and Western.

But the definition on which Federal relies is for "underlying limits," not "underlying hazards." "Underlying limits" clearly refers to the $1 million limit of AIIC's policy, the only policy listed in Schedule of Underlying Insurance, the schedule to which the definition refers.

Federal's reliance on paragraph D under the definition of "underlying limits" is also misplaced. That paragraph provides underlying limits include: "any reinstatement of limits or supplemental or other limits available under the insurance described in paragraphs [A] and B, above."

The insurance described in paragraphs A and B is the AIIC policy and any "applicable antecedent, renewal or replacement" of the AIIC policy. Western's policy is not a reinstatement of limits, or supplemental or other limits "under the insurance described in

7

paragraphs A and B." Instead, its policy is in excess of the described insurance.

Federal is attempting to stitch together an argument gathered from bits and pieces of its policy. Its needlework has failed to create even a plausible ambiguity. Any such ambiguity would be interpreted against Federal in any event. (*Gemini Ins. Co. v. Delos Ins. Co.* (2012) 211 Cal.App.4th 719, 722, fn. 1.) Had Federal intended that its coverage not attach until the exhaustion of all other insurance, it could have easily said so. It did not. (See, e.g., *Community Redevelopment Agency v. Aetna Casualty & Surety Co.* (1996) 50 Cal.App.4th 329, 335 [coverage would not attach until exhaustion of limits of named insurance "plus the applicable limits of any other underlying insurance]; *Carmel Development Co. v. RLI Ins. Co., supra,* 126 Cal.App.4th at p. 509 ["whenever the Insured is covered by other primary, excess or excess-contingent insurance not scheduled on this policy . . . , this shall apply only in excess of, and will not contribute with, such other insurance"].) The trial court correctly concluded that Western's coverage is in excess of Federal's coverage.

III.

*Equitable Subrogation and Indemnity*

Federal contends the trial court erred in granting Western equitable subrogation and indemnity.

The answer to Federal's contention is obvious. Western's coverage was in excess of Federal's coverage in the *Chen* action. The insurers pooled their money in contemplation of a settlement. The settlement did not exhaust the limits of Federal's coverage. Therefore, Western is entitled to a return of its money.

8

But Federal raises the elements of equitable subrogation and indemnity.

The elements of an insurer's cause of action for equitable subrogation are: "(a) the insured suffered a loss for which the defendant is liable, either as the wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer; (b) the claimed loss was one for which the insurer was *not* primary liable; (c) the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable; (d) the insurer has paid the claim of its insured to protect its own interest and not as a volunteer; (e) the insured has an existing, assignable cause of action against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer; (f) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; (g) justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and (h) the insurer's damages are in a liquidated sum, generally the amount paid to the insured." (*Transcontinental Ins. Co. v. Insurance Co. of the State of Pennsylvania* (2007) 148 Cal.App.4th 1296, 1305.)

### (a) Primary Liability

Federal argues Western is the only insurer that agreed to indemnify ACH for liability ACH assumed under an indemnity agreement.

Federal cites part of an indemnity agreement contained in ACH's management agreement with Hi-Desert. In the part cited by Federal, ACH agrees to indemnify Hi-Desert for liability

9

arising from any of its actions or inactions authorized or required under the management agreement.

That seems fairly straight forward until one reads the entire indemnity agreement contained in the management contract: "Except for the gross negligence, fraud or willful misconduct of Agent and/or any employee of Agent, Owner agrees to indemnify, defend and hold harmless Agent from and against any and all liabilities, loss, damages, actions, causes of action, expenses, costs and fees, including, without limitation, court costs and reasonable attorneys' fees, arising from any cause either in and about the Project or elsewhere when Agent is carrying out the provisions of this Agreement or acting under the express direction of Owner. Agent agrees to indemnify, defend and hold harmless Owner as to any matter resulting from any actions or inaction authorized or required under this agreement or caused by the negligence, fraud or willful misconduct of Agent or any employee of Agent.

In the first sentence of the paragraph, ACH agrees to indemnify Hi-Desert. In the second sentence, Hi-Desert agrees to indemnify ACH. The paragraph appears to be nonsense and its enforceability is highly doubtful.

More importantly, the case settled. There was no determination of liability on anyone's part under any theory. We cannot presume ACH was liable under an indemnity agreement. What is certain is that the complaint in the underlying *Chen* action alleged ACH was negligent. In that action Western's coverage was in excess of Federal's coverage.

### (b) Same Loss

Federal argues that Western did not compensate ACH for the same loss for which ACH is primarily liable. The argument is

10

nothing more than a reiteration of Federal's argument that Western had primary coverage in the *Chen* action against ACH. We have rejected that argument.

### (c) Assignable Cause of Action

Federal argues that ACH did not have an assignable cause of action against Federal. Federal claims that once the settlement was made with the insurers' pooled money, ACH was released from all liability, and thus had no possible claim for damages against Federal.

Prior to the settlement of the *Chen* action, ACH had an assignable cause of action against Federal because Federal refused to acknowledge its duty to indemnify that ACH was primary to Western's coverage. It would be absurd to allow Federal to use Western's money to settle Federal's debt to ACH, and hold the settlement deprived Western of the right to recover the money from Federal.

### (d) Damages

Perhaps the most bizarre of Federal's arguments is that Western did not suffer any damages caused by Federal. Federal is preventing money that rightly belongs to Western from being returned to it.

### (e) Equitable Position

Federal claims that Western is in an inferior equitable position. Federal's claim brings us back to where we started. Western's coverage is in excess to Federal's coverage; the settlement of the *Chen* action did not exhaust the limits of Federal's coverage; therefore, Western is entitled to the return of its money.

11

Federal argues that Western should be denied relief because it "surreptitiously" slipped the endorsement into its policy. Federal points to no evidence to support that claim.

IV.

*Prejudgment Interest*

Federal contends the trial court erred in awarding Western prejudgment interest.

The trial court awarded Western prejudgment interest at the rate of 10 percent pursuant to Civil Code section 3287, subdivision (a). Section 3287, subdivision (a) provides, in part: "A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day, except when the debtor is prevented by law, or by the act of the creditor from paying the debt." The court has no discretion in awarding interest under Civil Code section 3287, subdivision (a). (*North Oakland Medical Clinic v. Rogers* (1998) 65 Cal.App.4th 824, 828.)

Federal argues that Western's request for prejudgment interest was untimely. No statute or rule of court establishes a procedure for requesting an award of prejudgment interest, or a time limit therefore. (*North Oakland Medical Clinic v. Rogers*, *supra*, 65 Cal.App.4th at pp. 829-830.) A general prayer in the complaint is adequate to support an award of prejudgment interest. (*Id*. at p. 829.) Because prejudgment interest is not a cost, but an element of damages, it should be awarded in the judgment on the basis of a specific request made prior to entry of judgment. (*Id*. at p. 830.)

Here Western claimed entitlement to prejudgment interest in its first amended complaint. After the trial court ruled for

Western, Western presented a form of judgment to Federal's counsel. The form contained an award of prejudgment interest. Federal filed a written objection. The trial court ruled for Western prior to entry of judgment. Thus, Western's request for prejudgment interest is timely.

Federal's reliance on *St. Paul Mercury Insurance Co. v. Mountain West Farm Bureau Mutual Insurance Co.* (2012) 210 Cal.App.4th 645 is misplaced. There the trial court was required to apportion the defense and settlement costs between insurers. The Court of Appeal held the trial court erred in awarding prejudgment interest because the prevailing party's share of the loss was not certain or capable of being made certain until the trial court determined what method of allocation was most equitable. (*Id*. at pp. 665-666.) Here there was no need for allocation. Western was entitled to all of the money it contributed to the settlement.

Federal argues the legal rate of interest is 7 percent, not 10 percent. Ordinarily the legal rate of interest under Civil Code section 3287 would be 7 percent. (Cal. Const., art. XV, § 1.) But Western relies on Civil Code section 3289, subdivision (b). That subdivision provides, "If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach."

Federal cites *Carmel Development Co., Inc. v. Anderson* (2020) 48 Cal.App.5th 492, 527, for the proposition that Civil Code section 3287 applies broadly to any cause of action in contract, whereas Civil Code section 3289, subdivision (b) applies only to actions for breach of contract. Federal claims there is no contract here.

13

Federal is wrong for two reasons: Western is subrogated to ACH's breach of contract against Federal, and Western and Federal entered into a written contract giving each party the right to litigate priority of coverage in the *Chen* action and reimbursement.

### DISPOSITION

The judgment is affirmed.  Costs are awarded to Western.
<u>NOT TO BE PUBLISHED.</u>

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.*

---

* Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14

Donna D. Geck, Judge

Superior Court County of Santa Barbara

_____

Tressler and Mohammed S. Mandegary for Defendant, Cross-complainant and Appellant.

McFaul, Fitch, Botwinick & Pasternak, James M. McFaul and Michael C. Pasternak for Plaintiff, Cross-defendant and Respondent.